IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| ERIC VON POOLE, | * | |
|     Petitioner | * | |
| | * | |
| v. | * | Civil No.: AMD-08-1918 |
| | * | |
| JOHN WOLFE, WARDEN, et. al., | * | |
|     Respondents | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \*

**RESPONSE TO ANSWER TO PETITION FOR WRIT OF HABEAS CORPUS
AND ORDER TO SHOW CAUSE**

Petitioner Eric Von Poole, through counsel Michael E. Lawlor and Andrew R. Szekely, Lawlor & Englert, LLC, files this Response to Answer to Petition for Writ of Habeas Corpus and Order to Show Cause.

## I. INTRODUCTION

Respondents, in their Answer to Petition for Writ of Habeas Corpus and Order to Show Cause (Answer), argue that Petitioner should be denied relief on both procedural and substantive grounds. As detailed below, the position of the Respondents is incorrect and Petitioner should be granted a writ of habeas corpus.

## II. ARGUMENT

**A.    The Petition for Writ of Habeas Corpus is not time-barred.**

Respondents argue that Petitioner's Writ of Habeas Corpus is time-barred. Petitioner's Writ of Habeas Corpus is now, however, time-barred because Petitioner's Motion for New Trial was a collateral attack on the judgment in this case

1

and tolled the statute of limitations for the filing of a Petition for Writ of Habeas Corpus.

While the direct appeal of the jury verdict was pending, Petitioner filed a *pro se* Motion for New Trial with the Circuit Court for Baltimore City. Petitioner filed the motion on April 2, 2003. It was denied without hearing by Judge Holland on July 16, 2003. The Office of the Public Defender entered its appearance to represent Petitioner in the appeal from that decision.

On March 12, 2004, the Court of Special Appeals affirmed Judge Holland's denial of the Motion for New Trial in an unreported opinion, *Poole v. State*, No. 1083, September Term, 2003 (filed March 12, 2004). On June 18, 2004, the Court of Appeals of Maryland denied Petitioner's Petition for Writ of Certiorari.

The substance of Petitioner's Motion for New Trial dealt with the same *Brady* violation alleged in both the state post-conviction proceedings and in this Court. *See* Respondents Exhibit 13. Respondents argue that regardless of the claims put forward in a Motion for New Trial it is not a collateral proceeding. In support of their position, Respondents rely on *Walkowiak v. Haines*, 272 F.3d 234 (4th Cir. 2001). Their reliance on *Walkowiak* is misplaced.

*Walkowiak* addressed the question of whether a Motion to Correct or Reduce Sentence Pursuant to West Virginia's Rule of Criminal Procedure 35(b) tolled the limitations period. The United States Court of Appeals for the Fourth Circuit Concluded that it did not because such a motion was "part and parcel of the original

2

proceeding in which the defendant was sentenced and **does not entail a legal challenge to the original sentence**." *Id.* at 239 (emphasis added).

That Petitioner's Motion for New Trial was filed before the same court as he was convicted in is not dispositive. *Walkowiak* held that "Often, even if not always, collateral review is conducted at least by a different judge, if not by a different court altogether, because it is the judgment of the original forum that is drawn into question in the collateral proceeding." *Id.* at 237. Petitioner's Motion for a New Trial attacked the legality of the original jury verdict, but did not draw the judgment of the trial court into question because the claim was based on newly discovered evidence that was unavailable to Petitioner at the time of trial. Further, not all collateral attacks on convictions take place before new judges. Motions to Vacate Sentence in federal court take place before the same judge who presided over the original proceeding and are certainly collateral proceedings.

It is clear that the Motion for New Trial is not part of the direct appeal process of a case in Maryland state courts. *See* Md. Rule 8-202 (tolling the period for noting an appeal when a Motion for New Trial is filed). If an attack on a judgment is not part of the direct appeal, it can be nothing other than a collateral attack. Section 2244(d) of 28 U.S.C. allows tolling of the statute of limitations for "other collateral review[s]", not only applications for post-conviction review. As Petitioner's appeal of his denial of the Motion for New Trial was not settled until June 18, 2004, the time for filing his Petition for Writ of Habeas Corpus did not begin to run until that date.

The time from June 18, 2004 until October 27, 2004, the date of the filing of Petitioner's Petition for Post-Conviction Review in state court was 131 days. Time began to run again on December 7, 2007, at the time of Petitioner's denial of Writ of Certiorari to the Maryland Court of Appeals for his post-conviction case. From that date until the filing of the Petition for Writ of Habeas Corpus was 228 days. The total time lapsed was 359 days or six days short of the one-year limitation. Petitioner's Petition for Writ of Habeas Corpus is therefore timely.

> **B.    Petitioner's Petition for Writ of Habeas Corpus alleges a *Brady* violation that constitutes grounds for relief**.

Respondents argue that Petitioner's claim of a *Brady* violation fails because there was no agreement and that even if there were an agreement is not material. Respondents are incorrect as to both points.

> **1.    There was an agreement between Leon Wilkerson and the State**.

Relying heavily on the reasoning of the courts that reviewed Petitioner's case as well as the decision in *Adams v. State*, 165 Md.App. 352 (2005), Respondents argue that no agreement for leniency ever existed between Leon Wilkerson and the State. The record as developed in the State courts shows this to be an unreasonable determination of the facts as well as an unreasonable application of Federal Law. *See* 28 U.S.C. § 2254(d).

The existence of an agreement between Wilkerson and the State is clear as Wilkerson was never charged with any crime related to the killing of Brian Johnson.

4

This is true despite Wilkerson's admission to being part of the robbing of drug dealers that ultimately led to the killing of Johnson. T.4 at 462. That testimony placed Wilkerson in substantial jeopardy as to the murder yet no charges were filed before or after Poole's trial. The pattern was not limited to Wilkerson. Gregory Veale and Antwone Lester, two cooperating co-defendants were never charged, while two other defendants who did not cooperate, Charles Hamm and Carl Harrison, were charged.

An examination of the testimony of Cynthia Jones at Petitioner's Post-Conviction Hearing, reveals that the post-conviction court's reliance on her testimony as to any agreement between the State and Wilkerson was erroneous. The State post-conviction court and appellate courts accepted, without any reservation, Ms. Jones's testimony was that she knew Wilkerson had pending drug charges; she did not check whether he was represented by counsel; she met with him to discuss his testimony at Petitioner's trial but never mentioned his pending cases; and she never spoke with Wilkerson's attorney once she learned that he had counsel. *See* H.52-57. The State courts also accepted, without reservation, that Wilkerson, a career criminal with convictions reaching back prior to his eighteenth birthday, would come forward and testify as a State's witness in two different murder cases without seeking any benefit for himself. Finally, the State courts accepted, again without reservation, that Wilkerson would walk into the State's Attorney's Office admit to being at minimum an aider and abetter to a robbery and perhaps an aider and abetter to

5

murder for no benefit whatsoever.  Accepting these facts at face value is clearly unreasonable.

Even if Ms. Jones was being truthful, so long as any one member of the State's Attorney's Office knew of an agreement, it must be disclosed.  *See Giglio v. United States*, 405 U.S. 150, 154 (1972).  Melissa Copeland, the prosecutor in Wilkerson's drug case, acknowledgment of the agreement was sufficient to require the State to disclose such information to defense counsel prior to trial.  It is clear from the record that Wilkerson's guilty plea took place prior to Petitioner's trial and that on July 11, 2002, Petitioner took the stand and testified against Petitioner.  Four days later, on July 15, 2002, Wilkerson was sentenced after the trial judge was informed of his performance at trial by Ms. Copeland.

   2.   **Information regarding Wilkerson's cooperation agreement was material to Petitioner's defense at trial**.

Respondents argue that even if there was an agreement between Wilkerson and the State that was not disclosed, the failure to disclose was not material due to the corroboration of Wilkerson's testimony with that of Veale and Lester.  Lester's testimony is, however, itself suspect given two letters he wrote to the lead detective on the case asking for assistance.  *See discussion below.*

Materiality does require certainty as to a different outcome, rather the touchstone of for materiality is whether "the favorable evidence could reasonably be taken to put the whole case in such a different light as to undermine confidence in

the verdict." *Kyles v. Whitely*, 514 U.S. 419 (1995).  Had the jury learned that Wilkerson was never charged despite his admitted role in the offense; that he had a pending sentencing that was purposefully set to occur after Petitioner's trial; and had they known of the potential sentence Wilkerson faced, there is a reasonable probability that a jury would have viewed Wilkerson's testimony with great skepticism.[1]

Further, disclosure of the decision to not pursue charges against Wilkerson would have allowed trial counsel to cross examine both Veale and Lester on the same point.  Arguing to the jury that all three men were not being charged in the crime, despite their open admission to having been involved would have severely undermined all of their testimony.  Further, the corroboration Respondents now rely upon would have been called into doubt as to whether the testimony reflected the events leading to the death of Brian Johnson or reflected the extremely lenient decision on the part of the Office of the State's Attorney to not charge any of the three men with anything related to the robbery, kidnaping, and murder of Brian Johnson.

Further, evidence of the agreement was material as to the credibility of Detective Nevins.  She testified that none of her witnesses asked for anything in exchange for their testimony, in direct contradiction to the testimony of Wilkerson at

---

[1] The jury would have been instructed, in fact, to view his testimony with caution. *See* MJPI-CR 3:13.

7

the motion for new trial in the *Adams* case. Such a direct attack on the credibility of Detective Nevins would certainly have shaded the jury's view of her overall testimony, especially with regard to the testimony of Lester.

### C. Trial counsel's ineffectiveness in failing to cross examine Antwone Lester with letters written to Detective Nevins constitutes grounds for relief.

Respondents argue that because the letters written by Lester to Detective Nivens do not mention Petitioner by name, they would have been of limited use. Even if this Court were to agree that because Petitioner's name is not in the letters means that the assistance Lester sought was not tied to Petitioner's case, the letters were still of value in impeaching Lester. At the very least the letters could have used to demonstrate Lester's desire to regain his freedom, his willingness to work with the State, and that even without an express agreement with the State he had incentive to testify in the State's favor.

In her closing argument to the jury the prosecutor pointed out that no agreements were made for Lester's testimony and that he was testifying solely because he was repulsed by the needless shooting of the victim. (T.6 at 717). Had trial counsel utilized these letters to contradict Detective Nevins's testimony that Lester never requested any benefits, there can be no question that Lester's testimony would have been significantly impeached.

### III. CONCLUSION

For the foregoing reasons and those outlined in Petitioner's previously filed

8

Memorandum of Facts and Law in Support of Petition for Writ of Habeas Corpus a writ of habeas corpus is warranted.

Respectfully submitted,

\_\_\_\_/s_____
Michael E. Lawlor
Andrew R. Szekely
Lawlor & Englert, LLC
6305 Ivy Lane
Suite 608
Greenbelt, Maryland 20770
301.474.3404

10

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on April 24, 2009, a copy of the foregoing Response to Answer to Petition for Writ of Habeas Corpus and Order to Show Cause was served via electronic case filing on Edward Kelley, Office of the Attorney General, Criminal Appeals Division, 200 Saint Paul Place, Baltimore, Maryland 21202.

/s
Andrew R. Szekely